## MODE OF USE OF STREETS BY TELEPHONE COMPANY.

[Probate Court of Cuyahoga County.]

CLEVELAND TELEPHONE COMPANY v. THE VILLAGE OF SOUTH NEWBURGH.

Decided, November 15, 1906.

*Telephone Poles and Wires—Use of Streets for Erection of—Authority of Probate Court with Reference to Mode of—Duration of Telephone Franchise—Extraordinary Uses of Street—Such as for Moving Buildings—Limitations on Power of Probate Court.*

1. A telephone company obtains its right to the use of the streets from the Legislature, and the function of the probate court includes neither the length nor extent of such use, but is limited strictly to the mode of use.

2. The moving of a building across or through a public street, in such a manner as may be prescribed or permitted by ordinance enacted by council, is a lawful, but not a public use of the street, and involves a privilege with reference to which the probate court has no duty to perform in fixing the mode of use of the streets by a telephone company.

HADDEN, J.

On the 28th of April, 1906, the petition was filed in this case, setting forth the corporate capacity of the parties, and that the plaintiff in carrying out the purpose of its organization and the discharge of its obligations to the public, was about to construct lines of telephone along and upon certain roads, streets, etc., in the village of South Newburgh, including the posts, fixtures, etc., necessary for its wires; and after specifying some twenty-one or more streets and public highways, the further averment is made that the plaintiff had undertaken to reach an agreement with the village as to its mode of use of such streets and highways, and the location and character of the structures to be placed thereon by it for such purposes, and that it had made due application to the council and officials of the village for that purpose, and had submitted maps and plats showing the location of the poles, and had specified to the village the kind and character of poles and other construction to be erected.

The averment is then made that the plaintiff was wholly unable to reach an agreement with the defendant or its officials, as to the mode in which plaintiff may use said streets or any of them; and the village, through its council, has refused to negotiate further with the plaintiff with respect to the use of said streets, except on condition that the plaintiff consent to the terms of a certain ordinance heretofore passed by the council, to which terms plaintiff can not agree.

The prayer of the petition is that the court determine the mode of use of the streets in petition specified, in the manner therein set forth to be a reasonable use thereof, and one which will not incommode the public in their use of said streets and highways; and that the court will, by its decree, fix such mode of use, or a reasonable mode of use, as by law prescribed.

On May 11, 1906, a demurrer was filed to the petition, which is very general in its character, specifying no cause or ground of demurrer, and this was overruled. An answer was filed June 13, 1906, admitting the corporate capacity of the parties and the making of application, and denying all other allegations in petition contained.

On the hearing, only two points or matters were presented to the court, it appearing that in all other respects the parties have agreed. The defendant insists that there should be some limit in time of the use and occupancy by the plaintiff of its streets, and it also insists that at any time when it may become necessary to move or transport vehicles or structures along or across the streets of the village, which are of such a size and nature as to require alteration or adjustments of the equipment of plaintiff, the plaintiff, after having five days' written notice so to do, should be obliged to make the necessary alterations or adjustments at its own cost.

As to both of these claims, the plaintiff insists that they are not the subject of agreement, and the court has no power to make any order regarding them; so that the specific questions presented are:

First. Can the court, in this proceeding, say when the right of the plaintiff to use the streets of the defendant shall end?

Second. Can the court make any order imposing upon the

plaintiff any duty in the way of altering or adjusting its equipment, in case same may become necessary for the purpose of allowing buildings or other structures to be moved along or across its streets?

The statute which gives the court any jurisdiction in this matter is Section 3451 of the Revised Statutes, and reads as follows:

"When any lands authorized to be appropriated to the use of a company are subject to the easements of a street, alley, public way, or other public use within the limits of any city or village, the mode of use shall be such as shall be agreed upon between the municipal authorities of the city or village and the company; and if they can not agree, or the municipal authorities unreasonably delay to enter into any agreement, the probate court of the county, in a proceeding instituted for the purpose, shall direct in what mode such telegraph line shall be constructed along such street, alley, or public way, *so as not to incommode the public in the use of the same;* but nothing in the section shall be so construed as to authorize any municipal corporation to demand or receive any compensation for the use of a street, alley, or public way, beyond what may be necessary to restore the pavement to its former state of usefulness."

As pointed out by Judge Minshall, in the case of *Zanesville* v. *Telephone Co.*, 63 O. S., 450, the section as enacted related to telegraph companies, but was subsequently made applicable to telephone companies.

In the case above referred to, the Supreme Court held the statute to be unconstitutional, because it required probate courts (which, according to the Supreme Court, belong to the judicial and not the legislative or executive departments of the government) to direct the mode in which a telegraph or telephone company may use the streets and alleys of a city or village, when the company and municipality can not agree. The court seemed to take the position that the statute required the probate court to perform legislative rather than judicial functions.

But in 64 O. S., 67, on a rehearing of the same case, the Supreme Court reversed its former holding, saying, among other things, that the fact that a power is conferred by statute on a court of justice, to be exercised by it in the first instance

in a proceeding instituted therein, is itself of controlling importance as fixing the judicial character of the power, and is decisive in that respect, unless it is reasonably certain that the power belongs exclusively to the legislative or executive department.

And further, that where the law confers a right and authorizes an application to a court of justice for the enforcement of that right, a proceeding upon such application is the exercise of a judicial function, though the order or judgment authorized be of such a nature that it can only be performed or its execution enforced progressively during a future period.

In the opinion written by Judge Williams, this language is used on page 79:

"It is essential that the rights of the two corporations, each holding separate franchises from the state with respect to the uses which each are claiming of the same property, should be so adjusted that both may be able to carry out the purposes of their creation and neither defeated in their objects by the conduct of the other."

Again, on pages 80 and 81:

"It will be noticed that it is not *the right to use the streets* that is made the subject of agreement between the company and the municipal authorities, or of determination by the court. That right, as has been seen, is granted to the company directly by the Legislature, and is not made to depend upon any consent or agreement on the part of the municipality. It is only the *mode* of such use that becomes the subject of agreement or judicial determination. The power of eminent domain residing in the state, it has been held under our present Constitution, is committed to the control of the General Assembly, by the grant of legislative power, and it may be exercised by that body directly, or by agencies, like private corporations, in such manner, under such conditions and through such tribunals having capacity to receive the jurisdiction, as may be by legislative enactment provided," etc.

And again, on page 83, in discussing the question whether this proceeding in this court is in substance if not in name, an appeal from the village council action, the court uses this significant language:

"The council is given no power to direct in what mode the lines of a telephone company shall be constructed in the streets of a municipality. Its sole province is to come to an agreement with the company, in regard to the mode of using the streets by the company. The making of such agreement between the parties is not involved in the proceeding instituted in the court, nor is its action in that regard in any way revoked. The jurisdiction conferred on the court is to determine the controversy between the disputant corporations, arising from their disagreement or failure to agree, by an order binding on both, directing in what mode the telephone lines shall be constructed in the streets and alleys so as not to incommode the public in the use of the same."

These expressions of the Supreme Court make quite plain the nature and extent of the jurisdiction of this court. It is "the mode of use" which is in question, not the length or extent of the use. The company gets its rights to use the streets from the state, through the Legislature, and if it had been the legislative intent that the use should be limited in time to a certain period, it would doubtless have said so, but whether it has said so or not, it has not given to this court any power to so limit it, and the first question must therefore be answered in the negative.

The second question is more difficult to decide, and can not be answered without a somewhat extended examination of the adjudicated cases. In the first place, the language of the statute is quite significant and has an important bearing. The court's power to direct the mode of construction is limited in an important particular. The mode it fixes must be such as not to incommode the public in the use of the streets, alleys, etc.

The thing to be cared for by the court then is the public's use of the streets. All other rights in the streets, and all other uses thereof, are to be left out of the consideration; so that the question is clearly presented whether the use of a street to move a building along it or across it—a building, we will say, wide enough to occupy the street from curb to curb, and high enough to require the cutting of wires which are strung so high as not to interfere with any other use of the street—is a use of such street by the public.

No adjudications of this question in this state have been cited, nor have I been able to find any. In the case of *Eureka City* v. *Wilson*, 15 Utah, 53, decided in 1897, it appears that the defendant, Wilson, was convicted for moving a building upon the street in violation of an ordinance of Eureka City. In affirming the conviction, the court uses the following language with regard to the use of the street by a house mover:

"This, however, is not an ordinary or a usual use of the street, and the appellant (Wilson) could not claim the privilege so to use it, as a matter of right."

Again, on page 62, the court says:

"The principal design of a highway is to accommodate public travel in the usual and ordinary mode, and this is so at common law; but it may lawfully be used for all purposes where the occasion and circumstances permit such use, without an unreasonable interference with the free passage over it of those who are traveling upon it in the usual manner."

Again, the court says:

"It was doubtless within the power of the city council of Eureka City to entirely prohibit the moving of buildings over its streets, * * * and such council, having the power to regulate the use of the streets and prevent obstacles being placed thereon, may, by ordinance, prevent the moving of buildings thereon, without the permission of the mayor or other officer; * * * and such power is not legislative but administrative. Where a municipal corporation may prohibit a thing altogether, it may prohibit it conditionally, and confer upon any officer or officers, power to determine whether a fact or state of things exists which will authorize the doing of it."

In a nisi prius case, reported in the 14 N. J. Law Jour., page 295 (*New York Telephone Co.* v. *Peter Dexheimer*), the court in charging the jury in an action for damages caused by cutting the plaintiff's telephone wires by defendant in order to enable him to move a house along the highway, says, among other things, that the use of a public highway for the purpose of travel in moving a building is not within the right which is enjoyable by the public in a public highway, and that the object of a public highway is to accommodate the public for the purposes of such travel and intercourse as are required for

public convenience, and for the transaction of public business; the use of the public highway for the purposes of travel in moving buildings was not within the right which was enjoyable by the public in that public highway.

In *Dixon* v. *Kewanee Electric Light & Motor Co.*, 53 Ill. App. Court, 379, decided in 1893, the court held that moving a house along a public street is not within the right enjoyed by the public as a use of public streets.

The only case which is at variance with those above cited, is that of the *Telegraph Co.* v. *Will,* 1st Phila. Reporter, 270, decided in 1852, where it is held—

"That the act of the defendant in moving the house was a lawful one; he had a right to the use of the highway for his lawful business, *usque ad celum.* The Legislature could not have intended to have restricted this common right without very express words. The company therefore seems subject to the contingency of such a use of the highway, if they do not take care in placing their wires."

There is no doubt that the use of the street for the purpose of moving a building in such a manner as is prescribed or permitted by the ordinance enacted by a city council is a lawful use of the street, but it is not the use by the public of the street. It is an extraordinary use of the street by an individual, and around it each municipal legislature throws certain restrictions in the interest of the use of the public of the street, and these restrictions clearly distinguish it from the public use of the street.

Upon the municipal corporation is cast the burden of keeping the streets open for travel and free from nuisance. The statute has not imposed upon this court the duty of performing anything with regard to the streets, which the municipal corporation is bound by its very nature to take care of. The conclusion is therefore reached that the court can make no order or direction as to how the poles or wires of the company shall be placed or managed or handled, in case their location should need to be changed in order to make the moving of a building along or across the street possible, for the reason that such use is not the public use, or the use of the public of the street.